Good morning, Your Honors. My name is Robert Froma. I'm Counselor for the City of Chicago, and I'd like to ask the attorneys to come up to the podium and address the court. Tell us your name, please, and who you represent, and how much time you'd like for your argument. Good morning, Your Honors. My name is Robert Froma. I'm Counselor for LMP Services, Inc., and I anticipate my opening argument to be about 15 to 20 minutes, and just a few minutes for rebuttal, depending on the issues raised by my opposing counsel. Very well. Good morning. Suzanne Lewis. I represent the City of Chicago, the defendant, Apolli, in this case, and I would ask essentially for, I prepared for 15 minutes. I would ask for roughly the same time as my opposing counsel. Thank you. Fifteen minutes will be. Thank you. Mr. Froma. Thank you, Your Honors. Good morning, Your Honors. As the mayor's office has admitted, the purpose of Chicago's 200-foot rule is to protect traditional restaurants. This is a statement from the mayor himself, from the mayor's office, that the rule exists to, quote, protect traditional restaurants. This is flatly unconstitutional under Chicago Title and Trust, a decision by the Illinois Supreme Court that governs this case. But the circuit court broke with Chicago Title and Trust and decades of Illinois jurisprudence by appointing the rule as a means to, quote, balance the interests of food trucks and restaurants. There's a difference, isn't there, between what happened in Chicago Title and Trust where they said they were creating a monopoly and what the trial court said here, and I think is consistent with what you said the mayor said, which is you're balancing competing interests. That's not creating a monopoly. Well, there are two points on that, Your Honor. The first one is that when Chicago Title and Trust uses the phrase promote monopoly, you have to go back to the case law, and what that means is that you are suppressing competition. As our brief says on page 29, many cases from Illinois make that point clear. The second point, Your Honor, is that balancing interests and the rank protectionism are one and the same. It is an exact same situation when you're using the police power of the state to tell one person it will be a crime for you to compete too effectively with this other person, and it goes directly against what this very court has said. This court in Exchange National Bank v. Skokie dealt with a situation not quite like this one but similar where you had two different business models. One had competitive advantage or people thought they had competitive advantages over another one, so the government tried to block that new entrant, and what this court said in rejecting that attempt said it is improper to, quote, In other words, the balancing the interests argument is doing just that. It is putting the thumb on the scale, the power of the state, to say you can't compete, and that has been squarely rejected, not only by Chicago Title and Trust. The city could outright ban food trucks, correct? I mean, if they wanted to really suppress competition, just ban them. They could potentially ban food trucks across the city, but when you permit vending, your actions have to be consistent with the Illinois Constitution. When you restrict businesses' activities like the 200-foot rule does, that has to have a reasonable relationship, a definite, substantial, definite, reasonable relationship to a legitimate public health and safety reason. This law, by the mayor's own words, does not. It is designed to protect traditional restaurants from competition. That is something that courts have squarely rejected for decades throughout Illinois, and the post hoc justifications that have been put out by the city in congestion and retail food options make no sense. No one would design this rule, or design a rule like this to achieve those interests, and that's because of this. Why doesn't it make sense? Well, it doesn't make sense, Your Honor, because the congestion argument, for instance, makes no sense whatsoever. In Chicago Title and Trust, for instance. But why doesn't it make sense? We're from Virginia. Yes. We're from Chicago. Yes. Congestion is a problem, and the city regulates congestion or attempts to regulate congestion all the time. Is there something wrong with that? There's nothing wrong with attempting to regulate congestion, but this is, no one would ever design this rule as a way to actually address congestion, and it shows. For instance, this rule requires that food trucks stay 200 feet away from restaurants. But we know that intersections are some of the most congested places throughout the city. Food trucks only have to stay 30 feet away from them. That is just clearly as unreasonable as pedestrian congestion. A rational basis analysis doesn't have to be perfect, right? It just has to have some rational relationship. It does, Your Honor. But here, this is identical to the situation that the Illinois Supreme Court said was clearly unreasonable in Chicago Title and Trust. There, the concern was safety, and the gas stations had to be 650 feet away from one another, but could be within 150 feet of a sensitive facility like a school or a church. The Illinois Supreme Court said, well, that's clearly unreasonable if your goal is safety. Same here. If you're going to require 200 feet from restaurants, but only 30 feet from intersections, that's a clearly unreasonable act. That's a clearly unreasonable way to address your congestion concerns. More often than not, I think a bigger point that shows that congestion is really an afterthought. It's a post hoc and doesn't exist. Wait a minute. Yeah. Are you saying the 200 foot requirement is for congestion purposes or for protection of established building-based restaurants? My point, the mayor has said. No, no, not what the mayor says, what you say. I say that the 200 foot rule is designed and was built for one purpose only, to suppress competition. So don't bring in the intersection. Okay. Well, I was just pointing out that there are other justifications that they've brought up after the fact. Hold no water. But this law has been designed from the ground up to suppress competition. And decades of Illinois... What's wrong with protecting a restaurant that pays for employees, a substantial number of employees, probably pays a city employee tax, pays real estate taxes, contributes to the economy of the city, and now is in competition with an entity or an enterprise that the city doesn't have to allow in any of them. What's wrong with that? Well, Your Honor, it's a couple of things. Pardon me. Is that the balancing the interest argument, that argument would go so far as to allow Chicago to say they want to protect, they like brick-and-mortar businesses, brick-and-mortar retailers. Well, we're going to block Amazon. We're going to block online retailers. They don't contribute as much to the city. They don't have jobs. So we can keep them out. That would be constitutional under that balancing the interest argument. We're talking about food trucks. We are talking about food trucks, Your Honor. But again... Tell me about the food trucks. Why is it unconstitutional for the city to make a determination that those businesses that pay a substantial amount of rent and that rent is used to value the building that they're paying rent in for real estate tax purposes, and those real estate taxes generate probably the bulk of the city's revenues, why shouldn't the city be concerned about maintaining that tax base? The reason, Your Honor, is that because all protectionist laws can be recast as we think this will help increase or maximize the tax base. That was the exact same situation we had in Exchange National Bank versus Skokie. That was a new car wash coming in, an automated car wash. Didn't need employees. And Skokie tried to stop it, partially because they were worried about, oh, well, what about the traditional car washes? They have jobs, and they'll go out of business. This will hurt our tax base. And this court said, no, you can't do that. You can't justify or discriminate between one person in favor of another because you think the other person is going to increase your tax base. That is precisely the kind of legislating economic protectionism that this court and your new Supreme Court have rejected over and over again in a variety of contexts, and it's no different here, Your Honor. There's a thin line, it seems, between protectionism and balancing, and the city is balancing all the time. Every ordinance is balancing the needs of one group against the needs of another. And isn't that all this ordinance is doing is creating more food trucks, creating these zones for the food trucks, and then as part of the balance, we're going to have this 200-feet rule, we're going to do things to balance it. Isn't that what this ordinance is doing? No, it's not, Your Honor. What this ordinance is doing, and food trucks have been in Chicago long before. Right, but this was part of the expansion of food trucks, was it not? This rule actually predates that ordinance, the ordinance that expanded cooking on board and things like that. It predates it. In fact, the predecessor to this rule, the 200-foot rule, was actually struck down by the circuit court. Because it was big. I wish that wording in the order was a little more complete. We understand that it was because there was a suppression of competition, but, Your Honor, the balancing of interests ordinance would give the city carp launch to pick and choose winners and losers whenever they want, and that is directly contrary to Chicago Title and Trust. It's contrary to Exchange National Bank Boston versus Village of Riverton. And what it would allow is for the government to essentially throw anyone out of business they don't like because they think someone else will do a better job, or not do a better job, but will have increased tax revenue for the city as a whole. And what the courts over and over again have said is that you just simply cannot do that. You can't do that. You have to allow the free market. You have to allow competition between these different entities. There's no regulation whatsoever? No, of course not no regulation, Your Honor. Of course. The whole purpose of the police power is to safeguard health and safety. So is it your point that these food trucks should be allowed to park right in front of any restaurant? I think that if there is an issue where we can actually show that there is actual congestion issues, that might be a plausible rule, but if you're talking just about food trucks and restaurants, I think that is per se illegitimate. I think that is flatly contrary to the holdings of both this court and Illinois Supreme Court for decades. Because after all, no matter what, whenever the government uses police power, it has to have some reasonable relationship to a public health and safety rationale. Have we ever said that? Or has the Supreme Court ever said it always has to be health and safety? Those are the only permissible governmental interests? It also says things like welfare as well, Your Honor. But it has to be tied to a legitimate government purpose. But it's not only health and safety. It is not, Your Honor. That is correct. But a legitimate government purpose, we know from Chicago Title and Trusts that restricting competition is not a legitimate government purpose. We know that from this court's ruling in Exchange National Bank. We know that from Boston v. Village of Riverton. We know that from Church v. State, a case from the Illinois Supreme Court dealing with occupational licensing. In a variety of contexts, over and over again, the Supreme Court and this court have made clear that you don't get to stack the deck. Governments don't have the power to use the police power to make it illegal for one party to compete with another one because we'd like party B better. That is just a bedrock principle of Illinois jurisprudence. And it has been for at least 50 years. Now, Your Honor. So there is no competition as is with the 200-foot rule? Oh, with the 200-foot rule? Is there competition between the food trucks and the established restaurants? I would say there is very minimal competition at best, Your Honor. But there is competition. Well, there is competition. But after all, the point of all these cases is that it is impermissible to suppress competition. It doesn't have to be eliminated entirely. The suppression of competition, the volitional act of saying we are going to make it a crime for you to go and compete with this other person or if you get too close to this other person because we think that you'll just be too good at your job and you'll run these other people out of business is a principle that this court has rejected in the past, and that's what it should do in this case as well. All right. Do you want to go to your other argument? Yes. Your Honor, so the other thing is in order to enforce the rule, Chicago requires food trucks to install GPS units that travel over all their whereabouts. And this violates Article I, Section 6. This is a search under the Illinois Constitution because the government physically places or requires the physical placement of a GPS device on my client's truck so that the city can track her whereabouts. Under United States v. Jones. And the public, right? What? And the public? Yes, the public has access, too. And that's actually why it's an unreasonable search, Your Honor. So I would be able to know where your food truck is so I could go there and buy some. Well, my client sends out her where she's operating via social media. I don't go on to Facebook, but I could go on the Internet and find out where the truck is parked, right? Well, my client has a calendar of where she goes on the Internet as well, so you'd be fine. But what this GPS requirement means is that regardless if she wants that information out there or not, anyone who wants access to it can reach out and grab it. Now, that is so far beyond what the city's justification for the searches are. They say the whole purpose of these searches is to conduct health inspections. But if you're going to conduct health inspections, why does the whole world need to know where my client is? The only people who need to understand and know where my client might be would be the Department of Health. And under New York v. Berger. Or your customers. That's not the government's purported interest here. If it's not a search. I'm sorry, Your Honor. If it's not a search, we don't have to worry about whether it's reasonable. That is true, but this is a search under black-letter law, because here you have the physical placement of a device on a vehicle so the government can gather information. What is the case law that you rely on that says that making it a condition of your license that you place a GPS on your truck is a search? What's the case? The condition that is a search? Yeah, it's a search. You can't have this license unless you put a GPS on your truck. Who's ever said that's a search? Well, nobody said that placing a GPS on a food truck is a search because this background hasn't come up. But we know from Jones that placing a GPS on a food truck. The government really placed it there, right? I'm saying you want a license, you put this GPS on your truck. Okay, Your Honor. But the whole point is that in two cases, Hanson v. Illinois Racing Board, and just a case from last year, Emanuel v. 59th and State Street, there the licensees, as a condition of licensure, said, okay, we will agree to warrantless searches. Yet in both those cases, this court said that those warrantless searches were unconstitutional and unreasonable because they were too excessive in scope. That's exactly what we have here, Your Honor. We have a situation where my client has to put a device on their vehicle in order to work, in order to operate as a food truck, just like in Emanuel v. 59th Street and State. They had to agree to warrantless searches in order to be given a license. And yet, this court still said that was an unreasonable search. And when you look at the facts here, this search is just as unreasonable. What's the search on? The search is under U.S. v. Jones, which has been incorporated into Illinois jurisprudence. It's the physical placement. In this instance, the city is not physically placing it. It is immaterial about who places the device, Your Honor. On what basis can you say that? In the case of Grady v. North Carolina, Your Honor, there there was a situation where there was going to be an ankle bracelet that was going to be on someone. And the Supreme Court said that was a search. It didn't give any pause to say, well, who's going to put that device on? Instead, in that North Carolina case, the state physically put a collar on. It's an ankle bracelet. The state did it. And here the state is required, not the state, but the city of Chicago is active. In those instances, it was the state's equipment, the state doing the act of putting it on. In this instance, it's merely the requirement of your client getting a GPS and your client getting an app. So that the government can gain information. And once you have that, that is a search for Fourth Amendment and Article I, Section 6 purposes. In Grady, it was an ankle bracelet. The Supreme Court didn't even bother to discuss, well, who's going to put the device on? Is he going to put the device on or is the state going to put the device on? The important part was that they were going to physically occupy his person in order to gain information. And that's what we have here. And that's why this is a search. And because this is both unnecessary and because this rule is unreasonable, sorry, the GPS tracking is unreasonable because it's wholly unnecessary. They claim it's for health inspections. They've never used it once in a five-year period to actually conduct a health inspection. They actually, when they want to find people, they just call them or look them up on social media. Under New York v. Berger, the warrantless searches have to be necessary to further the state's interests. You can't say that a GPS monitoring, when it's never been used for its ostensible purpose, is necessary. They have failed to meet their burden on that regard, Your Honor. And moreover, as I mentioned, because the information is available to anyone who requests it, that is far broader than what the government's purported interests here would be. And that renders it unreasonable under the third prong of New York v. Berger. I have one last question. Did your client have a license prior to this ordinance coming into effect? Did she have a preexisting license? Do you know? I'm trying to remember, Your Honor. I believe, I could look back at my client and she could tell you, but I believe that actually she, I believe she was licensed prior to. She's not. Okay, thank you. I believe that. I believe she got licensed in 2011, so it was prior to the ordinance and prior to. So when she got into this business, there was no GPS requirement. She didn't agree to any of this. It was just something that was dictated to her a year after the fact. And it really bothers her. She has to, she feels like it's an ankle bracelet around her. She's testified that it makes her feel like a criminal. She has to pay hundreds of dollars a year for this monitoring, monitoring that this is never once used for its purpose. How can this be? This cannot be constitutional. This can't be under Article I, Section 6. This can't be seen as a reasonable search, Your Honor. And so to sum up, because both the 200-foot rule and GPS scheme are unconstitutional, this Court shall reverse the Circuit's court's assertion and grant entrenchment to plaintiff. Thank you. Thank you. Ms. Lowers. Good morning, Your Honor. May it please the Court. This morning I will explain that the Circuit Court properly granted judgment for the city on plaintiff's constitutional challenges. As for the due process challenge to the 200-foot rule, we submit that is rationally related to several legitimate governmental objectives. And as for the GPS requirement, it is not a search and it is not an unreasonable search, and so it does not run afoul of the Illinois Constitution's unreasonable searches clause. Beginning with the 200-foot rule, under rational basis review, that rule is presumptively valid and will be upheld as long as it is rationally related to a legitimate governmental purpose. And that standard is satisfied, the Illinois Supreme Court tells us, so long as there is a conceivable basis for finding the statute rationally related to legitimate governmental interests. The 200-foot rule we submit is … Do you agree with the plaintiff that even under rational basis review, there has to be an evidentiary showing of some rational connection between the stated purpose and the ordinance or statute? There just has to be a rational basis for it. But does the evidence have to support that? Do you have to have evidence to support that that basis in fact exists? Sometimes evidence can be used to support it. But no, not necessarily. These cases are often resolved on motions to dismiss. Because it's apparent that the connection is apparent. Correct. And so we did move to dismiss on that basis here. The circuit court denied it. And so there are facts and evidence in the record. We're not suggesting that those be ignored. They support the rational basis that we rely upon. We submit there are at least three legitimate objectives that the 200-foot rule serves. And the first is the balancing, the protecting brick-and-mortar restaurants on private property while allowing for the expansion of food truck business. The 200-foot rule is, at bottom, a compromise, a way to mitigate, not entirely eliminate, the competition that food trucks have on restaurants. The 2012 amendments as a whole were meant to expand food truck operations. And, in fact, it has done so. Food trucks are thriving in Chicago. Their own expert, Mr. Butler, counted thousands of stops in the loop and hundreds more around Chicago. But food trucks parking near restaurant entrances can affect the appearance of the restaurant, can create congestion close to the entrance, and there can be an unfairness in the competition that results when a truck is allowed to temporarily park so close to a restaurant and siphon off business when the truck does not have remotely comparable overhead, no rent or property taxes. And the restaurant, on the other hand, is investing considerably much more in establishing itself as part of the community. So there is no case of which I am aware that says a legislature cannot enact legislation to address a perceived unfairness in competition such as this. Of course it can. And we cite a few examples, like General Motors' case, Illinois Power Company. And the 200-foot rule we submit is not meaningfully different than other measures that the government takes to foster and protect development of various types of businesses that bring in jobs and taxes and improve quality of life. In AAA, that's an example. The city was promoting medical facilities in a medical district. Other food trucks, because that medical facility had value for Chicago and its residents, a value worth protecting. And food trucks, the court said, could affect the aesthetics, create congestion. And the Supreme Court held that it was, quote, the protection of the investments of property owners, end quote, that was the legitimate government interest. And it's the same here. Brick and mortar restaurants have a value worth protecting in Chicago. Restaurants are more permanent. There are steady contributors to the economy. They pay property taxes, define neighborhoods, provide predictable destinations. Do you believe that Chicago Title and the other cases at the Plaintiff's Trust are still valid law? Well, I would say that this case is distinguishable from those cases because none of those cases involve the unique circumstances involved when you have business operations on the public way. We're not choosing one restaurant over another. We're looking at two inherently different types of businesses, really. And I submit that those cases would likely come out differently if you were dealing with the mobile business, for example. But do you think they would come out differently under those facts in today's law? Perhaps they may not. There has certainly been development of the law in cases like New Orleans v. Dukes and the AAA cases. But in addition, I mean, just imagine in the Chicago Title and Trust Company, if it were a mobile gas truck parking on the street right outside of a gas station instead of another business opening up about 650 feet away. I submit it would come out differently because there's an unfairness in that kind of competition. You don't pay rent. You don't pay rent. And, you know, in the community, it's not just about the gas station owners. You know, the community has an interest in having those services that are going to be more permanently located there and not just the here-today, gone-tomorrow mobile services, which certainly serve a purpose and are desirable in Chicago. But there's a very good reason for wanting to protect our brick-and-mortar restaurants in Chicago. And there are other rational bases, and congestion is another one. Guarding against undue congestion, that is a real concern, and it's an obvious concern. Food trucks draw lines on the public sidewalks. And they tend to have the same busy periods as restaurants. And a lot of restaurants have sidewalk cafes. That limits the available sidewalk space, especially during the warmer months in Chicago. My opposing counsel calls this a post hoc justification. But what these are are reasons given during the course of litigation, and there's nothing wrong with that.  But I would note that two explanations that we give were announced in the very press releases that they rely on, not just protecting brick-and-mortar restaurants, but also congestion. You can find that in the appendix, a very brief, at page A117. So these are not just made-up explanations. Congestion is a very real concern. And LMP argues there are lots of other congestion sources to which the 200-foot rule does not apply, like theaters, intersections, street performers. There are all kinds of rules that guard against congestion in these various circumstances. We discussed some of them in our brief. And in any event, these other congestion sources, there's no reason to believe they routinely draw crowds at the same time as food trucks or that they involve anything like sidewalk cafes that take up part of the sidewalk that exacerbates a sidewalk congestion problem. Are you still relying on the reason that the trial court rejected about improving access in underserved communities? Is that something you're still relying on? Yes, yes, we do. We do still submit that that is a rational basis that supports this legislation as well. And I'd like to make a few comments on that. That rational basis is that the 200-foot rule encourages food trucks to go where there are less retail food options. And we submit that every time the rule is complied with, putting aside designated food truck stands, every time the rule is complied with, this purpose is served because a food truck is parking where there are no restaurants within at least 200 feet. And at least some food trucks are going to the city's more underserved communities as identified in the citywide retail market analysis. According to the analysis of plaintiff's expert, Dr. Butler, trucks are going to places like Inglewood, South Shore, Beverly, Humboldt Park. And I think it's also important to emphasize the testimony of a food truck driver that is quite telling. That is Mr. Daniel Herrera. He said that he operates in Hyde Park because he does not have to worry about the zones there, 200-foot zones, and is welcome to near the university where he says there is demand and not enough food options. Now, my opposing counsel says that's not true, that Hyde Park is not underserved. But the point is Mr. Herrera's motivation here. He perceives there to be an unmet demand there and chooses that over dealing with the 200-foot zones in downtown Chicago. He's a prime example of how the 200-foot rule can encourage food trucks to branch out. And now I'd like to make a few comments about the GPS requirement. Food trucks are required to have GPS devices and to turn them on while they're operating or while they're being serviced at a commissary. We submit the GPS requirement is not a search. Instead, it is a record-keeping requirement, much like the one at issue in the California Banker's case, which we discussed in our brief. It's not an unconstitutional search to require a business to keep records so that if the need arises, the government can access it for proper licensing administration purposes. In the California Banker's case, it was copies of checks and identification of patrons with accounts that was required to be kept. The court said the search does not take place until the government accesses those records, and the city never did that here. And with respect to the line of cases, U.S. v. Jones and Grady, we submit that reliance is misplaced. The court recognized there that a search occurs when a government official trespasses onto an individual's property, attaches a tracking device for the purpose of monitoring movement. Here, food trucks owners agree to use the device in exchange for the privilege of doing business in Chicago. But you're saying that once the city accesses the records, then there is a search? If the city accessed the records, it could be an administrative search. The city has not done that now. It's reasonable, but GPS requirement itself would not be an unreasonable search. But then what is the purpose of that burden on the trucks if you're never going to access the records? I'm not saying we never would access. It's much like the requirement in the California Banker's case that we can require them to keep records so that if we have a need, we can go and request or get a subpoena or a want because they're in a position to keep those kind of records that could be pertinent to whether or not they've complied with the ordinance or pertinent to an investigation into a foodborne illness that's been reported or some other health and safety violation. So there's been no use or access, and the city's not the one monitoring. They go and get their own GPS service provider. It's not like in Jones or Grady where the city is on the receiving end of all those. So somebody else is retaining those records. Some third party is retaining those records. Correct. And there's been no use or even access of the GPS info by the city at this date. You know, when that does happen, there might be, depending on the circumstances of which could be many, there could be an as-applied situation. But the GPS requirement itself has not as of yet been used to obtain GPS information to locate food trucks, and there has not been a search. And even if the GPS requirement is treated as a search, we submit that it's reasonable. Given the limits of time, I will limit my comments to the comments my opposing counsel made regarding the scope and rest in our brief for the remainder of those arguments concerning the burger standard. We assume that the regulation does have a properly defined scope. The GPS requirement, under Board of Health rules, GPS information will only be obtained when needed to investigate health and safety concerns or for compliance purposes or emergencies or with the permission of the licensee or a warrant or some other court order. Now, the plaintiffs say the scope is too broad because the ordinance requires a service with a publicly accessible application programming interface. In the plaintiff's argument, that means it has to provide location information to anyone who wants it, but the ordinance just does not say that. The Board of Health does not interpret or enforce it that way. Deference is owed to that interpretation. Rule 8, which is set out in the appendix to our brief, says that the GPS provider must, quote, be able to provide, end quote, an API available to the public. Then if food truck owners, you know, want to access that information for promotional purposes to be put up on a website or whatever, the GPS provider would have the capacity, they would be able to do so. But in fact, it is not required that they broadcast their location on an ongoing basis, and in fact, I do not believe that LMP does so. She chooses to post on her website and Twitter and other social media sites, but certainly broadcasting the location of all trucks at all times is not a requirement under the municipal code. So for all these reasons, we submit that the GPS requirement is not an unreasonable search, and if there are no further questions, I will conclude. All right. We do ask that the judgment of the circuit court be affirmed. Thank you. Thank you. Very briefly, Mr. Fulmer? Yes. A few points. The first thing is that I think there might be a misconception about the difference between my client and restaurants. My client actually owns restaurants. She has employees. She has over a dozen employees. She has property taxes she pays. She has a commissary that she has to pay for. These are things that, you know, she has financial stakes just like restaurants do. Second, the city wants to talk about public property all the time with regards to the ordinance, but the rule applies on private property as well. And, in fact, my client wants to work in a weird parking lot up north, but she can't because across the street, somewhere where there could be no congestion or anything like that, across the street there's a restaurant and it means that it's illegal for her to operate there. The congestion, again, holds no more, not only because the city requires much farther distances from restaurants than intersections, but the very fact that the city does not have any distance requirement between food trucks, which if you thought there were actually a congestion source problem, you would have that, speaks volumes to the fact that this isn't about congestion whatsoever. Well, if it became a problem, they would amend the ordinance and say you can't have more than two food trucks next to each other. You know, it's an evolving process. I understand that, Your Honor, but they are saying that- And competition's good, I thought you said. Competition is good. We like food trucks together, but the fact that food trucks can be right next to each other shows you that there isn't a congestion issue, that food trucks aren't a real congestion issue, and that the 200-foot rule has nothing to do with congestion. It has to do with competition. Your Honor, on the GPS point, I wanted to talk just very briefly, because there seems to be some confusion about whether this is a search. There was a recent case out of the Eastern District of New York, United States v. Lambus, and there the court made clear that the placement of a device and then the subsequent accessing of that device in order to gain that information are two separate and distinct searches for Fourth Amendment purposes. So in other words, what my opposing counselor was saying, that it's not a search until they gain to access it, is just wrong. It is a search the moment the device is placed on the vehicle. Placed on the vehicle by the licensee. At the mandate of the government in order to work. It's the same way, you have to let me in if you want to work. Can the city require you to maintain records? Can the city require? Oh, absolutely. The city could require my client to maintain records to show where she was in case they wanted to inspect something. Is this not a form of an electronic record? No, Your Honor, it's not. This is the physical placement of the device. If they wanted to have her just keep records, they could just say, keep records. What they want to do is use this to be able to enforce the 200-foot rule. So they want to have this device on the vehicle so they have a constant, very precise, within a few feet measurement of where she is. So that they can see, was she within 200 feet? I mean, the ordinance itself in that section about the GPS actually says, for the purposes of the 200-foot rule, there will be a rebuttable presumption that you were where your GPS says. That shows what they want to do is to enforce the rule. And the only way they can do that is by installing these devices or having these devices installed on the client's vehicles. And under the United States v. Jones and a number of cases, that is a search. And lastly, there's one last thing about AAA services. AAA services deals with food trucks, but it's a completely separate case from this one. It's completely distinguishable. As you heard, it's about the medical district, a small area that has ambulances and hospitals. And the concern was being able to get emergency vehicles in there. By contrast, this rule applies throughout the entire city. And applies, again, as the mayor said, for the purpose of protecting traditional restaurants. And we say that that is unconstitutional under decades of Illinois jurisprudence. And for that reason, we'd ask for this court to reverse. Thank you very much. The court would like to thank the parties for their presentation this morning and for their briefing on this subject. The matter is taken under advisement of the courts in recess. Thank you.